UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

 v.            Case No. 23-CR-113

MARKITA BARNES,

    *Defendant*.

**DEFENDANT'S EMERGENCY MOTION TO ADJOURN JURY TRIAL**

  Defendant Markita Barnes, by her attorneys Gimbel, Reilly, Guerin & Brown, LLP, by Attorneys Nicole M. Masnica and Jason D. Luczak, respectfully moves this court for an order adjourning the jury trial scheduled to begin on Monday, November 10, 2025, in the captioned matter.

  In support, Ms. Barnes asserts that an adjournment of the trial is necessary as thtere has been a substantial amount of relevant discovery disclosed in the days leading up this trial, to include

1. On October 21, 2025, two days before the final pretrial was held in this matter, the US Attorney's Office disclosed approximately 92 additional pages of discovery to defense counsel.
2. Shortly after the final pretrial, on October 29, 2025, an additional five new witness interviews totaling 16 pages were disclosed.
3. Again, on November 4, 2025, 26 new or potentially duplicative documents including memorandum of understanding issued by Ms. Barnes to Medicaid contractors, emails and correspondence between my client and Medicaid contractors, correspondence with doctors seeking referrals, etc., totaling approximately 119 pages. It was asserted that some

1

of these materials may be in discovery, but that a number of these are new and not in discovery.

4. Finally, just yesterday, four days before trial, in addition to three grand jury transcripts disclosed pursuant to local rules, the U.S. Attorney's Office disclosed 22 new interview reports totaling 60 pages, 59 NCIC histories (notably, one reveals a government witness has two 2016 felony convictions not disclosed on the government's *Brady/Giglio* disclosure so a thorough review of all criminal history reports is necessary) that will most certainly be over 100 pages once printed, and four proffer letters relative to the primary/key fact witnesses (Attachment A).

5. Just this morning, AUSA Stewart confirmed that all four witnesses who received proffer letters were first the recipients of target letters and those were turned over to the defense for the first time today at 11:44 a.m. (Attachment B).

6. The defense seeks an adjournment of trial as these new disclosures make it impossible to be properly prepared for trial, as these new disclosures have spurred the need to do additional investigation into the proffers and promises made by the government to the four primary accusers of Ms. Barnes.

7. Regarding the new disclosures of the proffers, this is of substantial importance to Ms. Barnes' defense. Since receiving these documents, counsel has contacted all of the attorneys involved in the proffer negotiations on behalf of the witnesses, but has not yet received a response. Counsel wishes to subpoena each of them to testify regarding the consideration and proffer discussions with their clients and additionally, the defense needs to subpoena all communications between any government official and the implicated witnesses and their counsel as these are highly relevant for impeachment purposes.

8. Communications between defense counsel and the government are notably not privileged and are ripe for exploration at trial and moreover, must be disclosed if relevant for impeachment purposes. It is irrelevant that the government claims no consideration or promises have been provided as these prior assertions have now been proven to be untrue and the defense must thoroughly investigate the issue on its

2

own given the lack of candor and late disclosures of this evidence, which is unquestionably discoverable impeachment evidence pursuant to

9. This is not a controversial position. The U.S. Department of Justice confirms to its employees and the public in Section 9-5.001 – Policy Regarding Disclosure of Exculpatory and Impeachment Information of Justice Manual, that timely disclosure of impeachment evidence required as a matter of law to ensure the defense has the appropriate amount of time to allow for adequate preparation for trial. The manual also states:

   > Government disclosure of material exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because they are Constitutional obligations, *Brady* and *Giglio* evidence must be disclosed regardless of whether the defendant makes a request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995).

10. The issue posed by late disclosure of this evidence is compounded by the government's prior representations in its pleadings to the court. Notably, the defense directly addressed its concerns in pretrial motions that there was some consideration given to potential witnesses despite the fact that no consideration or proffer letters had been turned over by the government. This was in support of its position that it could examine this issue at trial as it is directly related to a witness's credibility and motivations for testimony. (Doc. 53).

11. Addressing that argument, the government wrote it its responsive pleadings, filed October 16, 2025, that while defense may cross-examine on these issues when it has a good-faith basis to believe there have been "promises or benefits" offered or given to or even discussed with a witness by the government, that there was no such good-faith basis in this case for the defense to believe this occurred, as "no witnesses were charged or made promises in exchange for their cooperation." (Doc. 55, 9-10). These proffers now demonstrate this to not be true, a fact learned four days before trial.

3

12. Four of the government's most important fact witnesses all received proffers granting use-immunity of all statements made to the government, in this case if they are to be believed, admissions to a variety of health care fraud crimes, though each attempts to shift blame to Ms. Barnes for their conduct.

13. Moreover, just this morning, the government disclosed that these same four witnesses also all received target letters prior to the proffers being executed. Those were turned over at 11:44 a.m. this morning.

14. Even more concerning is that seemingly in response to the defense pointing out in its motion in limine response pleadings that one key witness, C.G., had discussed in her original email that her grandmother had advised her to enter a guilty plea related to this investigation. A new investigative report received yesterday detailing a follow-up interview with C.G. implies again that there were no discussions of potential charges from the government related to this investigation. (Attachment C). The report reads:

> Additionally, the original proffer letter provided to [C.G.] was reviewed. [C.G.] reiterated her understanding of the proffer letter and that it meant that none of her truthful statements could be used against her. She acknowledged her understanding that no other agreements or promises had been made. Prosecutors have not made any plea offers or deals. [C.G.] explained that the comment she made during her first interview about a plea agreement was based on a statement made by her Grandmother telling her to take a plea deal. [C.G.] stated this was just something her Grandmother said and this statement was not actually related to any offer made by the government.

15. This representation in the interview report is disingenuous as the target letter to C.G. (and the three others) reads in part:

> The United States has received information indicating that you have committed a felony, i.e. Health Care Fraud and False Statements Regarding Health Care Matters, in violation of Title 18, United States Code, Sections 1347 and 1035. Before seeking federal criminal charges, I wanted to give you and your attorney the opportunity to meet with representatives of this office to discuss the anticipated charges and their possible resolution. Although I am offering you and your attorney this opportunity, you are not required to meet or talk with us.

4

> Because of the serious nature of your alleged conduct, if you do not have an attorney, you should obtain one as soon as possible…If I do not hear from you or your attorney by **November 15, 2022,** this office will make a charging decision without any input from you.

16. As a result of these late disclosures and this new evidence, the defense wishes to conduct additional investigation, to include subpoena requests for additional documentation related to this evidence. Four days ahead of trial is not enough time to thoroughly review this information and to conduct necessary investigation.

17. Moreover, the defense is still comparing the new non-investigative report discovery to determine what is new and if additional investigation is necessary based upon the receipt of new evidence.

18. This is an extremely serious matter, and Ms. Barnes will go to prison if convicted given the mandatory minimum penalties related to two of the charges. It is necessary for all investigative avenues, to include a thorough exploration into the proffers and promises made or implied by the government, to be taken prior to trial and days to do so is insufficient.

19. Finally, while writing this motion, three new reports were turned over by email, to include another interview of one of the primary witnesses, S.M., (who also had a proffer that was just disclosed yesterday) that occurred three weeks ago on October 23, 2025.

20. Exclusion of this evidence is not an adequate remedy as this evidence is impeachment related to the credibility of government witnesses. Thus, Ms. Barnes needs to use this evidence in support of her trial, but requires additional time to subpoena witnesses, subpoena potential records related to potential consideration, and to investigate what consideration was truly given. This need for delay is not caused by Ms. Barnes being ill-prepared as the defense anticipates the government will argue: it is because the government failed in its discovery obligations and took steps to mislead the defense and the court about the consideration given based on its representations in its pleadings on this very issue. Central to Ms. Barnes' defense is the credibility of the

5

government's witnesses and the consideration they may have received to push blame onto Ms. Barnes for their own misdeeds.

21. As such, the defense is seeking an emergency adjournment of the trial in this matter to allow for full and proper investigation into this highly relevant impeachment evidence.

## CONCLUSION

For the reasons stated above, the defense respectively requests that the court grant an adjournment of the jury trial scheduled to begin on November 10, 2025, to a later date.

Dated this 7th day of November, 2025.

Respectfully submitted,

GIMBEL, REILLY, GUERIN & BROWN LLP

By: ___/s/ Nicole M. Masnica___
    NICOLE M. MASNICA
    State Bar No. 1079819
    Email: nmasnica@grgblaw.com
    JASON D. LUCZAK
    State Bar No. 1070883
    Email: jluczak@grgblaw.com
Attorneys for the Defendant

POST OFFICE ADDRESS:

330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440